IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARY ENGEL,                          )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )    No. 10 C 3288
                                     )
ROBERT BUCHAN, et al.,               )
                                     )
          Defendants.                )

MEMORANDUM OPINION AND ORDER

Gary Engel ("Engel") has sued former FBI Agent Robert Buchan ("Buchan") and former Village of Buffalo Grove ("Village") Police Officer Robert Quid ("Quid"), charging each of them with violations of state and federal law[1] following Engel's release in 2010 after 19 years of incarceration. In response Buchan and Quid have filed partial motions to dismiss Engel's claims based on Brady and on the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and Buchan has also sought to cloak himself in the protective mantle of qualified immunity.[2] For the reasons set out hereafter, both motions (1) are denied as to

_____

[1] For purposes of this memorandum opinion and order, the critical federal claim is one that invokes the long-established doctrine announced in the seminal opinion in Brady v. Md., 373 U.S. 83 (1963).

[2] On February 25, 2011 Buchan's counsel also filed a motion on behalf of the United States, which had been named a defendant under the Federal Tort Claims Act in the amended complaint, seeking to dismiss Engel's state law claims. That motion will be dealt with in due course after it has reached the fully briefed stage. Because the United States is not involved in the current motions, this opinion will use the term "defendants" to denote the two individual movants alone.

Engel's <u>Brady</u>-based claim, with respect to which Buchan is not entitled to qualified immunity, and (2) are granted as to Engel's RICO claims.[3]

## Fed. R. Civ. P. ("Rule") 12(b)(6) Standard

Under Rule 12(b)(6) a party may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) did away with the formulation first announced in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." As <u>Twombly</u>, 550 U.S. at 562-63 put it:

> <u>Conley</u>'s "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the <u>Conley</u> Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement.

<u>Twombly</u>, <u>id.</u> at 570 held instead that a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." Or put otherwise, "[f]actual allegations must be

---

[3] On August 6, 2010 Quid's motion for his dismissal was granted as to Engel's federal malicious prosecution claim but denied as to his state malicious prosecution claim.

enough to raise a right to relief above the speculative level" (id. at 555).

But almost immediately thereafter the Supreme Court issued another opinion that seemed to cabin Twombly somewhat. Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007) has explained that further development:

> Two weeks later the Court clarified that Twombly did not signal a switch to fact-pleading in the federal courts. See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). To the contrary, Erickson reaffirmed that under Rule 8 "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" 127 S.Ct. at 2200, quoting Twombly, 127 S.Ct. at 1964. Taking Erickson and Twombly together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.

It is on those terms that the familiar Rule 12(b)(6) principles still require the district court to accept as true all of plaintiff's well-pleaded factual allegations, drawing all reasonable inferences in plaintiff's favor (Christensen v. County of Boone, 483 F.3d 454, 457 (7th Cir.2007)(per curiam)).[4]

---

[4] This opinion identifies Buchan's original supporting memorandum as "B. Mem." and Engel's responding memorandum as "E. Mem.," with Buchan's and Quid's reply memoranda being referred to respectively as "B. R. Mem." and "Q. R. Mem."

Engel's ordeal began when Buchan and Quid initiated a murder investigation involving Engel's friend Steve Manning, a former Chicago police officer (¶¶10, 11).  Although that initial investigation led nowhere, defendants built cases against Manning for another murder--that of James Pellegrino--and for the Missouri kidnaping of two drug dealers (¶¶12, 13, 15).

Manning was ultimately convicted of murder in Illinois and kidnaping in Missouri (¶24).  Defendants, believing that Engel had participated in the Missouri kidnaping, had attempted to secure Engel's cooperation in securing that conviction (¶¶17-20).  When Engel disclaimed all involvement and refused to cooperate (¶¶19-21), defendants brought kidnaping charges against Engel, which led to his conviction by a Missouri jury and a 90-year prison sentence (¶22).

After he had spent a decade in prison, Manning's Illinois murder conviction was overturned in 1998, and in 2002 the Court of Appeals for the Eighth Circuit threw out his Missouri kidnaping conviction (¶25).  Manning was released after neither state sought to retry him (id.), and he then brought civil rights claims in this District Court against Buchan, Quid, Village and an additional FBI agent (¶26).  In that action, assigned to this

---

[5]  All citations to Engel's First Amended Complaint filed January 12, 2011 (referred to in the text simply as "Complaint") will take the form "¶ --."

4

Court's colleague Honorable Matthew Kennelly, Manning asserted a
Brady-based claim against Buchan under the auspices of Bivens v.
Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S.
388 (1971) and joined the United States as a defendant under the
Federal Tort Claims Act ("FTCA") (¶29).

Judge Kennelly held that Buchan was not entitled to
qualified immunity on the Brady-based claim, and that decision
was then affirmed in Manning v. Miller, 355 F.3d 1028, 1035 (7th
Cir. 2004) ("Manning I").  In late 2004 Manning tried his Brady-
based claims to a jury, leaving his tort claims against the
United States to be decided by Judge Kennelly (¶31).  Manning
received an over $6.5 million jury verdict on his constitutional
claims against all defendants (¶32).  In a significant reversal
of fortune, however, Judge Kennelly ruled against Manning on his
FTCA claims and found that decision compelled the setting aside
of the jury verdict (¶¶34-36).[6]

Engel had evidently kept abreast of Manning's civil rights
suit, for he filed a habeas corpus petition based on the evidence
of law enforcement misconduct adduced during Manning's federal
trial (¶39).  In February 2010 the Missouri Supreme Court vacated
Engel's conviction on the ground that Buchan and Quid had
committed Brady violations in withholding exculpatory evidence

_____

    [6]  That decision was affirmed in Manning v. United States,
546 F.3d 430, 438 (7th Cir. 2008) ("Manning II").

(see <u>State ex rel. Engel v. Dormire</u>, 304 S.W.3d 120, 129 (Mo. 2010)(en banc)).  Engel then filed this action in May 2010.

In late 2010 Buchan made it known that he would refuse to answer discovery until there was a ruling (and potentially an appeal) on his entitlement to qualified immunity.  On October 21, 2010 this Court granted Engel's motion to compel Buchan to answer the discovery requests as to the non-RICO claims.  Buchan then moved to stay proceedings while he appealed what he labeled the "effective denial" of qualified immunity on the <u>Brady</u> claim.  On December 3, 2010 this Court certified the appeal as frivolous and denied the motion to stay proceedings on the ground that <u>Manning I</u> had earlier denied Buchan qualified immunity for nearly identical misconduct on the <u>Brady</u> claims.  On December 21, 2010 the Court of Appeals dismissed Buchan's appeal on the basis that it lacked jurisdiction.  With all the pieces in place, and with the case having returned to this Court's docket after its brief sojourn to the Court of Appeals, the relevant portions of defendants' motions to dismiss are now ripe for decision.

### <u>Bivens</u> Claim

Buchan asserts that a remedy under <u>Bivens</u> should not be "extended" to violations of a right to a fair trial under <u>Brady</u>.  But that contention cannot be squared with precedent from both the Supreme Court and our Court of Appeals.

As for the Supreme Court, <u>Davis v. Passman</u>, 442 U.S. 228

6

(1979) relied on Bivens in expressly recognizing a cause of
action and a damages remedy for violations of the Fifth
Amendment's Due Process Clause.

And our Court of Appeals has followed suit by consistently
permitting Bivens claims that target due process violations (see,
e.g., Alejo v. Heller, 328 F.3d 930, 932 (7th Cir. 2003) and
Hoosier Bancorp of Ind., Inc. v. Rasmussen, 90 F.3d 180, 182 (7th
Cir. 1996)). And there is no question that the wrong asserted
here--a violation of the right to a fair trial, which is derived
from the Due Process Clause--undoubtedly falls within those
parameters.

Even more directly in point and most important for present
purposes, Manning I, 355 F.3d at 1031 specifically held under the
facts of that case that the Brady-based claim there could proceed
under the authority of Bivens. Although Manning I stopped short
of stating that all Brady claims could be brought under Bivens,
it implied that such a broad holding would be consistent with
Seventh Circuit precedent that recognizes Bivens as an
appropriate vehicle for due process violations (id. at 1031 n.1).
But even when confined to its facts, Manning I forecloses
Buchan's argument in this action because Buchan himself was a
defendant in that litigation and the two cases involve virtually
identical conduct.

Buchan mysteriously ignores the Manning litigation in his

7

briefing, offering instead a lengthy exposition on the Supreme Court's jurisprudence of implied rights of action (B. Mem. 2-8). Buchan's only reference to Manning I came in his November 12, 2010 motion to stay proceedings pending appeal, where he said:

> Defendant Buchan never raised a special factors argument in the Manning litigation until his cross-appeal in 2007, which was dismissed without consideration as moot when the Seventh Circuit found that Defendant Buchan prevailed on other grounds. See Manning v. United States, 546 F.3d 430, 438 (7th Cir. 2008) ("Manning II"). Thus, the Seventh Circuit never had an opportunity to address the special factors issue in the Manning case.

But as Buchan himself makes clear in his current memorandum in support of his motion to dismiss, the "special factors" argument has been a fixture of Bivens jurisprudence since Bivens itself. It is not a new development that draws Seventh Circuit caselaw into doubt, and the fact that it was not expressly raised in Manning I in no way invalidates that case's clear holding.[7]

---

[7]   Indeed, Buchan's current attempt to downplay Manning I's effect on this action is in direct tension with the characterization of that decision in the United States' 2007 appellate brief in Manning II, found at 2007 WL 2426651:

> In [Manning I], the defendant agents argued that the Bivens remedy should not be extended to Brady claims and that if Brady claims are to be permitted under Bivens, they should not be allowed to proceed absent a predicate finding of a Brady violation in the prior criminal case. This court rejected these arguments, noting that circuit precedent establishes that Bivens may be used to bring claims for violations of procedural and substantive due process. Manning v. Miller, 355 F.3d at 1031. We restate and incorporate

Nor does the dictum in Carvajal v. Dominquez, 542 F.3d 561, 570 & n.3 (7th Cir. 2008) change that result. Carvajal, id. at 567 held that a DEA agent's false statement to a prosecutor did not rise (or fall?) to the level of a Brady violation. Although Carvajal did not reach the question whether a Bivens action was available for a Brady violation, it included an ipse dixit--without citation to any Seventh Circuit precedent--that it was "doubtful" that such a remedy existed (id. at 570).[8] Nonetheless the Carvajal dictum is not a reason, in the face of binding precedent, to dismiss Engel's claim.

This Court therefore holds that Engel may properly assert his Brady-based claim against Buchan as a Bivens action. That leads in turn to the question whether Buchan is insulated against that claim by qualified immunity.

## Qualified Immunity from the Bivens Claim?

To overcome a defense of qualified immunity, Engel bears the

---

those arguments here to preserve them.

Although it is conventional wisdom that estoppel rarely operates against the government, it is particularly disturbing to find a second government lawyer blithely reversing position simply because that lawyer finds that a 180° shift may better suit his current effort at advocacy.

[8] Such dictum illustrates the danger of opining (or ruminating) on facts not before a court, for the plaintiff in Carvajal had actually been acquitted. By contrast, it is difficult to understand how simply having a conviction overturned--and no remedy for damages--can adequately compensate someone who was wrongfully convicted and has consequently spent nearly two decades in prison.

burden of demonstrating (1) that the facts, taken in the light most favorable to Engel, show that Buchan violated a constitutional right and (2) that the constitutional right was clearly established at the time of the alleged violation (see Saucier v. Katz, 533 U.S. 194, 201 (2001)).[9]  Buchan asserts that he is entitled to qualified immunity because the Complaint, in his view, does not plead sufficient facts to state a due process claim.

That contention also fails to grapple with the significance of the Manning litigation.  Manning I, 355 F.3d at 1034 examined the allegations against Buchan--allegations that are nearly identical to those here--and found that they "easily satisfied" the just-stated first prong of the qualified immunity test. Those allegations resulted in an over $6.5 million jury verdict against Buchan, although that verdict was later vacated for a legal reason wholly unrelated to the sufficiency of the evidence.

Engel's 16-page Complaint alleges the same set of facts-- basically that Buchan framed him, just as he had Manning, by fabricating evidence, manipulating witnesses and withholding exculpatory evidence.  According to Engel (and there is no reason to doubt it), this case will involve the same witnesses and rely on the same evidence developed in the month-long Manning trial.

---

[9]  Under Saucier those questions had to be considered in that order, but Pearson v. Callahan, 129 S.Ct. 808, 818-21 (2009) has relaxed that protocol.

Engel's Complaint has thus undoubtedly given Buchan fair notice of the nature of the claim against him, and to suggest otherwise defies common sense. It is really an understatement to say that Engel's Complaint has stated a claim for relief that is "plausible on its face" (<u>Twombly</u>, 550 U.S. at 570).[10]

    <u>Manning I</u> is also instructive (and dispositive) on the second prong of the qualified immunity test: whether a reasonable officer would have known that his actions were unconstitutional in light of clearly established law. Here is what was said in <u>Manning I</u>, 255 F.3d at 1034:

> [I]t is enough that prior to the actions that gave rise to this case, it was well established that investigators who withhold exculpatory evidence from defendants violate the defendant's constitutional due process right.

And just as <u>Manning I</u> held that the nearly identical conduct there constituted clearly established violations of a defendant's constitutional rights, so do those same actions by Buchan for purposes of this suit.[11] In sum, because Engel has properly

---

[10] Although by no means dispositive in an <u>Iqbal</u>-<u>Twombly</u> analysis, it is helpful to note the success of Engel's <u>Brady</u> claim in the Missouri Supreme Court's <u>Dormire</u> decision. <u>Dormire</u> initially noted that Engel presented five separate arguments for habeas relief, and after doing a full <u>Brady</u> analysis on one of them--misconduct relating to the testimony of a key witness--the court granted Engel's habeas petition and vacated his conviction (304 S.W.2d at 126-30).

[11] Buchan quite rightly chooses not to argue that Engel's <u>Brady</u> claim fails to allege a violation of clearly established law. That section of Buchan's memorandum (B. Mem. 18-19) deals exclusively with the RICO claim.

stated a claim for a violation of a constitutional right, and because that right was clearly established at the time of the asserted violation, Buchan is not entitled to qualified immunity against the Brady claim.[12]

## RICO Claims[13]

Engel claims that Buchan and Quid employed the FBI and Village as "enterprises" to conduct racketeering activity in violation of 18 U.S.C. §1962(c) and conspired to do so in violation of 18 U.S.C. §1962(d).[14]  Defendants attack that claim in somewhat different ways.

For his part Quid argues that the RICO claims are time-barred and, alternatively, that Engel lacks standing to pursue them and has failed to plead two predicate acts, as required by

_____

[12]  As stated in this Court's December 3, 2010 order certifying Buchan's interlocutory appeal as frivolous, Buchan is also issue-precluded from asserting qualified immunity by virtue of the denial of immunity in Manning I.  Application of "offensive collateral estoppel" (see Parklane Hosiery Co. v. Shore, 439 U.S. 322, 332-33 (1979)) is appropriate here because Buchan fully litigated and lost the issue of qualified immunity in Manning I, and he attempts here to invoke immunity for essentially the same conduct.

[13]  While Manning I has preclusive effect on Buchan's disentitlement to qualified immunity for the Brady claim, that is not so as to Judge Kennelly's handling of Manning's RICO claims. Judge Kennelly permitted the RICO claims to go to a jury, which found against Manning on those claims.  Hence Engel cannot wield the sword of offensive collateral estoppel in that respect.

[14]  All further references to RICO's provisions will take the form "Section --," employing the Title 18 numbering but omitting the prefatory "18 U.S.C."

Section 1961(5).[15]  Buchan also advances a time-bar defense, in
addition to which he shoehorns his assault on the elements of
RICO into a bid for qualified immunity on the premise that a
plaintiff's failure to state a claim of violation of a
constitutional right entitles the official against whom the claim
is brought to qualified immunity.  This opinion will speak to the
time-bar subject first, then moves on to the elements of a RICO
claim.

**Tolling Under <u>Heck v. Humphrey</u>**

Engel admits that he filed his RICO claim more than four
years after discovering his injury, a delay that would normally
require dismissal of the claim as time-barred (<u>Jay E. Hayden</u>
<u>Found. v. First Neighbor Bank, N.A.</u>, 610 F.3d 382, 387 (7th Cir.
2010)).  But dismissal is not warranted, he urges, because his
claim was tolled under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) and
therefore did not accrue until his conviction was vacated by the
Missouri Supreme Court in 2010.  <u>Heck</u>, <u>id.</u> at 487 held that a
claim under 42 U.S.C. §1983 ("Section 1983")[16] is not cognizable

_____

[15]  Quid's initial supporting memorandum referred only to
the statute of limitations and standing issues, and he did not
broach the predicate acts issue until his reply (Q. R. Mem. 4).
Normally arguments not made in an initial brief are forfeited,
but Quid's arguments on that score will nonetheless be considered
along with the similar points made by Buchan.

[16]  No confusion should result from the dual shorthand use
of "Section --" to denote both that statute and the provisions of
RICO, for the statutory numbering is patently different.

where the resolution of the claim "would necessarily imply the invalidity" of a state court conviction or sentence--that is, claims that would necessarily imply the invalidity of the conviction or sentence do not arise, and so the statute of limitations does not begin to run, until that conviction or sentence has been overturned (<u>Washington v. Summerville</u>, 127 F.3d 552, 555 (7th Cir. 1997)).

As a threshold matter Quid and Buchan concede that <u>Heck</u> is not limited to claims brought under Section 1983, but it may also apply in the RICO context.[17] They do not agree, however, that Engel's RICO claim "necessarily implies" that his conviction was invalid. Instead, they say, his claim accrued when he first discovered the injury, and it is now time-barred as a result.

Engel has by far the better of the argument. His allegations--that defendants deprived him of a right to a fair trial by fabricating evidence, tampering with witnesses and obstructing justice--are strikingly similar to those made in <u>Heck</u> itself. Heck charged in his Section 1983 suit against state

---

[17] Engel cites numerous cases that invoke <u>Heck</u> as a bar to RICO claims. <u>Heck</u>'s applicability in that context is not surprising. After all, the impetus behind <u>Heck</u>'s holding was not the singularity of a Section 1983 action as such, but rather the need to promote the finality and consistency of prior judicial rulings by not permitting collateral attacks on convictions through civil suits for damages (see 512 U.S. at 485-86). Certainly a civil RICO claim challenging a conviction poses the same concerns.

14

prosecutors and a police officer that they engaged in an unlawful investigation, knowingly destroyed exculpatory evidence and employed an unlawful voice identification procedure at a trial resulting in his conviction (512 U.S. at 479). Such claims, the Heck Court explained, quite obviously cannot coexist with a valid conviction because they seek to recover damages directly attributable to the conviction itself (id. at 486-87).

Quid attempts to escape Heck's obvious applicability by seeking to analogize Engel's claims to allegations made in the Fourth Amendment context, which Heck, id. at 487 n.7 suggested might not necessarily imply the invalidity of a conviction. But Engel is not alleging a Fourth-Amendment-violative false arrest (as in Wallace v. Kato, 549 U.S. 384, 387-92 (2007) or Booker v. Ward, 94 F.3d 1052, 1056 (7th Cir. 1996)), a claim that has been held to be outside of Heck's purview. Instead Engel is bringing due process claims under the Fifth Amendment as to Buchan and under the Fourteenth Amendment (or perhaps the Fifth) as to Quid, and in no sense could those claims have accrued before his conviction, because the asserted misconduct is inextricably linked to his criminal trial.

As explained in Heck, claims of that nature simply cannot coexist with a valid conviction. And that being the case, Engel's RICO claims were tolled under Heck and are therefore not

15

time-barred.[18]

**RICO Standing**

Despite having overcome the limitations problem, Engel is not out of the woods, for he must still demonstrate that he has standing to pursue a RICO claim. Standing is a jurisdictional requirement that this Court must consider before reaching the merits of a RICO claim (Evans v. City of Chicago, 434 F.3d 916, 924 (7th Cir. 2006)). And to show standing to sue under RICO, Engel "must first present the court with evidence that he incurred an injury to his 'business or property' within the meaning of §1964" (id. at 924-25).

Evans, id. at 925, quoting Doe v. Roe, 958 F.2d 763, 767 (7th Cir. 1992), held that the injury to business or property required for RICO standing does not include "recovery for personal injuries and the pecuniary losses incurred therefrom." Thus, for example, income lost due to an inability to seek gainful employment while imprisoned is not a cognizable RICO injury (id. at 926-27). Nor is money spent on legal fees defending against criminal charges (id. at 931).

Engel argues that the injury to his "business or property"

---

[18] Interestingly, Quid does not argue that Engel's other claims are time-barred, even though RICO has the longest and most generously construed limitations period of any claim in this lawsuit aside from the state law claim of malicious prosecution, which does not accrue until the conviction has been overturned (Ferguson v. City of Chicago, 213 Ill.2d 94, 99, 820 N.E.2d 455, 459 (2004)).

is that he was compelled to spend money defending himself against the criminal charges and suffered a loss to his business reputation and "then-existing business opportunities" (¶66). Those appear to be the kind of damages, derivative of claims of false imprisonment and malicious prosecution, that are barred by _Evans_. But _Evans_ did not foreclose the possibility that a plaintiff such as Engel could establish standing by demonstrating "that he has been unlawfully deprived of a property right in promised or contracted for wages," as opposed to the mere loss of the _ability_ to pursue employment (434 F.3d at 928).[19]

Engel's Complaint speaks of an injury to his "then-existing business opportunities" (¶66), but it does not indicate whether he was actually employed and then lost his job because of defendants' asserted misconduct. Some clarity can be found in his Mem. 13, in which he writes that he can "prov[e] that he lost income from, not just the opportunity to pursue work, but actual employment." Although a Complaint amendment to that effect might suffice to establish a cognizable RICO injury and thus confer standing to pursue the claim, that prospect is rendered moot because Engel has failed to establish a "pattern of racketeering activity" (Section 1962(c)) for reasons discussed in the next

---

[19]    B. R. Mem. 12 somehow asserts that _Evans_ does not recognize loss of income from actual employment as a cognizable RICO injury, but that position cannot be squared with the language of the opinion itself (434 F.3d at 928).

section.

**RICO "Pattern of Racketeering"**

Claims under Section 1962(c) require a plaintiff to demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" (<u>Vicom, Inc. v. Harbridge Merchant Servs., Inc.</u>, 20 F.3d 771, 778 (7th Cir. 1994)). Even if it is assumed that the conduct, enterprise and predicate act elements have been satisfied--and it is uncertain at best whether Engel has adequately identified at least two predicate acts[20]-- Engel's RICO claim must be dismissed because he cannot meet the pattern requirement.

Under Section 1961(5) a "pattern of racketeering activity" requires at least two predicate acts of racketeering committed within a ten-year period. But just as "[o]ne swallow does not

---

[20] With the possible exception of 18 U.S.C. §1510(a), which is limited to obstruction of a criminal investigation by means of bribery, the applicability of the federal crimes identified by Engel as potential predicate acts (18 U.S.C. §§1503(a), 1503(c) and 1512) hinges on the presence of a <u>federal</u> proceeding. That is problematic at best, because Engel was prosecuted in state court under state law, and it appears that he was never the target of a federal grand jury. It is also a stretch to say that tampering with a witness under Missouri law (Mo. Ann. Stat. §575.270)--an offense that is not itself contained in the list of acceptable predicate acts based on state law (see Section 1961(1)(A))--may nonetheless be categorized as an act of state-law "bribery" for RICO purposes. Even though Engel and Buchan had multiple rounds of briefing to settle those questions, the answers remain elusive. And the lack of factual detail in the RICO section of Engel's Complaint, especially in regard to the presence vel non of a <u>federal</u> proceeding, does not help matters.

make a summer,"[21] predicate acts alone do not make a RICO "pattern."  To establish a pattern Engel must also demonstrate that those predicate acts "amount to, or that they otherwise constitute a threat of, <u>continuing</u> racketeering activity" (<u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 240 (1989) (emphasis in original).

That is what is known as the "continuity plus relationship" test (<u>Midwest Grinding Co. v. Spitz</u>, 976 F.2d 1016, 1022 (7th Cir. 1992)).  "Continuity" may be one of two types, open-ended and closed-ended (see <u>H.J.</u>, 492 U.S. at 241), and here Engel urges the closed-ended variety.[22]  Closed-ended continuity, as explained in <u>Jennings v. Auto Meter Prods., Inc.</u>, 495 F.3d 466, 473 (7th Cir. 2007)(internal quotation marks omitted):

> refers to criminal behavior that has come to a close but endured for such a substantial period of time that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future.

Engel's claim of continuity is squarely foreclosed by <u>Gamboa v. Velez</u>, 457 F.3d 703 (7th Cir. 2006), which held on an interlocutory appeal from the denial of a motion to dismiss that plaintiff had failed to establish RICO continuity.  In <u>Gamboa</u> a

---

[21]  Aristotle, <u>Nicomachean Ethics</u> book I, ch. 7.

[22]  Although Engel mechanically recites the characteristics of both categories of continuity in his Complaint (¶64), he abandoned any notion of open-ended continuity in his response to Buchan's motion to dismiss (E. Mem. 18).

plaintiff who had been acquitted of murder sued several Chicago
police detectives for malicious prosecution and intentional
infliction of emotional distress, as well as violations of
Section 1983 and RICO (id. at 704). Gamboa charged that the
detectives framed him, along with four other defendants, by such
actions as "making false arrests, tampering with witness
statements, procuring perjured testimony, committing perjury"
themselves and then covering up their wrongdoing (id. at 706).
Gamboa, id. at 709 held that the alleged predicate acts did not
demonstrate the requisite continuity, describing its holding in
these terms:

> Restated, when, as here, a complaint explicitly
> presents a distinct and non-reoccurring scheme with a
> built-in termination point and provides no indication
> that the perpetrators have engaged or will engage in
> similar misconduct, the complaint does not sufficiently
> allege continuity for §1962(c) purposes even if the
> purported scheme takes several years to unfold,
> involves a variety of criminal acts, and targets more
> than one victim.

There is no difficulty in transposing that holding onto
Engel's RICO claims. Here Engel's Complaint also "explicitly
presents a distinct and non-reoccurring scheme," the goal of
which was to engineer the false convictions of Engel and Manning.
As described in the Complaint, that scheme took place over the
course of four years, involved a number of criminal acts and had
more than one victim in its sights. Those allegations mesh
almost exactly with the elements described in Gamboa's carefully-

tailored holding.

Nor is there even a hint that defendants--both now retired from their law enforcement positions (see ¶¶7, 8)--"have engaged or will engage in similar misconduct" (Gamboa, 457 F.3d at 709). And it makes no difference that, in Engel's opinion, defendants have continued to obstruct justice by not apprehending the actual perpetrators of the crime (¶62). Gamboa, id. at 708 n.2 expressly noted that "acts to conceal the underlying wrongdoing in a RICO suit do not carry with them the threat of future harm and generally do not extend the duration of the underlying scheme."[23]

Engel attempts to distinguish Gamboa on the basis that the predicate acts in that case were limited to framing individuals for a single crime, whereas his own claim is not so limited (presumably Engel is referring to the related prosecution of Manning for murder). But the Gamboa holding is not restricted to situations in which law enforcement officers are investigating a single crime. What is necessary is rather that the complaint does not set out a "distinct and non-reoccurring scheme with a built-in termination point" such that there is no threat of continued criminal activity (457 F.3d at 709). And the attempt

---

[23] Gamboa's complaint in fact contained the same allegation that the law enforcement defendants had engaged in a sort of continuing failure to apprehend the perpetrators of the crimes (id. at 708).

to frame Engel and Manning, as alleged in the Complaint here, ended with both of them in prison for long terms, thus unquestionably foreclosing any threat of continued criminal activity. That Manning was also prosecuted for murder in addition to kidnaping does not change that inescapable conclusion.

It is also worth noting the remarks in <u>Gamboa</u>, 457 F.3d at 710 as to the attempted use of RICO as a weapon against law enforcement officers by those who, like Engel, believe they were wrongfully convicted:

> We briefly add that this conclusion [that the claim cannot establish RICO continuity] makes particular sense in the context of a frame-up claim against police detectives.

> \*       \*       \*

> While we do not intend to minimize Gamboa's case by labeling it "garden variety," it is not uncommon for a criminal investigation to develop over the course of several years. Further, many investigations involve a variety of police activities and result in charges against multiple defendants. Under the district court's approach, the presence of three such commonplace occurrences would satisfy §1962(c)'s continuity requirement and thereby routinely enable the conversion of malicious prosecution claims into RICO claims. That is too broad a brush given RICO's limited concern of punishing organized and habitual criminal conduct.

Such a clear message from our Court of Appeals should not be lightly ignored, and it only reinforces the conclusion reached here that Engel has failed to state a viable RICO claim. Engel's RICO claim is therefore dismissed, as is his conspiracy

claim under Section 1962(d) because the latter is based on the same core of facts (see Stachon v. United Consumers Club, Inc., 229 F.3d 673, 677 (7th Cir. 2000)).

### Conclusion

Buchan's and Quid's partial motions to dismiss are granted as to Engel's RICO claims, which are therefore dismissed with prejudice.  But Buchan's motion is denied as to Engel's Brady claim--and subsumed with that denial is the denial of qualified immunity as to that claim.

This action has been hanging fire much too long because of procedural and pleading skirmishes.  This Court expects the parties to move forward aggressively on Engel's surviving claims, with an eye toward setting a schedule for the completion of discovery as early as possible.  And because the same government counsel represents both Buchan and the United States, it is expected that discovery will be managed so as to minimize the need to plow the same evidentiary fields if the newly-filed United States motion (see n.2) were to be denied.[24]

_____
Milton I. Shadur
Senior United States District Judge

Date:  March 4, 2011

_____

[24]  No inference should be drawn on that score--this Court expresses no view as to the merits of that motion.

23