IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION

GARY ENGEL,                       )
                                  )
         Plaintiff,               )
                                  )
         v.                       )    No. 10 C 3288
                                  )
ROBERT BUCHAN, et al.,            )
                                  )
         Defendants.              )

                      MEMORANDUM OPINION AND ORDER

   Counsel for codefendants Robert Buchan ("Buchan," a former FBI agent) and the United States have moved to dismiss the state-law tort claims advanced by plaintiff Gary Engel ("Engel") against the latter. While Engel's original Complaint included claims of intentional infliction of emotional distress, malicious prosecution and civil conspiracy, he did not name the United States as a party until he added it as a defendant via the Federal Torts Claims Act[1] in his November 2010 Amended Complaint.

   In late February 2011 the United States filed its current motion, which is now fully briefed. For the reasons stated hereafter, the motion to dismiss is granted in part and denied in part.[2]

---

   [1] Under the Federal Tort Claims Act the United States is liable "in the same manner and to the same extent as a private individual under the circumstances," except for prejudgment interest and punitive damages (28 U.S.C. §2674).

   [2] This Court's March 4, 2011 memorandum opinion and order recited in detail the facts underlying Engel's claims. Given that recent exposition, there is no need to reinvent the wheel here. Those so inclined are referred to that opinion (2011 WL 833622, not yet reported in F.Supp.2d).

**Standard of Review**

Under Rule 12(b)(6) a party may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) did away with the formulation first announced in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

As Twombly, 550 U.S. at 562-63 put it:

> Conley's "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the Conley Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement.

Twombly, id. at 570 held instead that a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." Or put otherwise, "[f]actual allegations must be enough to raise a right to relief above the speculative level" (id. at 555).

But almost immediately thereafter the Supreme Court issued another opinion that seemed to cabin Twombly somewhat. Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007) has explained that further development:

> Two weeks later the Court clarified that Twombly did
> not signal a switch to fact-pleading in the federal
> courts. See Erickson v. Pardus, 551 U.S. 89, 127 S.Ct.
> 2197, 167 L.Ed.2d 1081 (2007). To the contrary,
> Erickson reaffirmed that under Rule 8 "[s]pecific facts
> are not necessary; the statement need only 'give the
> defendant fair notice of what the...claim is and the
> grounds upon which it rests.'" 127 S.Ct. at 2200,
> quoting Twombly, 127 S.Ct. at 1964. Taking Erickson
> and Twombly together, we understand the Court to be
> saying only that at some point the factual detail in a
> complaint may be so sketchy that the complaint does not
> provide the type of notice of the claim to which the
> defendant is entitled under Rule 8.

And since then Iqbal v. Ashcroft, 129 S.Ct. 1937 (2009) has both (1) further explicated and (2) universalized Twombly's teaching.

It is thus the Twombly-Iqbal canon that has since controlled the treatment of complaints and does so here. Here is Adkins v. VIM Recycling, Inc., No. 10 C 2237, 2011 WL 1642860, at *7 (7th Cir. May 3), the most recent statement of the Rule 12(b)(6) standard by our Court of Appeals, employing long-familiar language without the overgenerous gloss that had been provided by Conley v. Gibson:

> We construe the complaint in the light most favorable
> to the plaintiffs, accepting as true all well-pled
> facts alleged, taking judicial notice of matters within
> the public record, and drawing all reasonable
> inferences in the plaintiffs' favor.

This opinion adheres to that dictate.

**Issue Preclusion and Judicial Estoppel**

Choice of law should be at the top of every legal analyst's checklist (even when the answer to the question seems obvious), and here the United States' memorandum begins not with a

3

discussion of the merits of Engel's tort claims, but rather with its assertion that Missouri law (and not that of Illinois) governs them. But with Illinois law having provided the rule of decision for the closely related tort claims brought by Steve Manning in Manning v. United States, No. 02 C 372, 2006 WL 3240112 (N.D. Ill. Sept. 28)--and more importantly, with the United States having been successful in defending against those claims by invoking Illinois law--it is unsurprising that Engel challenges the United States' change of course by now arguing for Missouri law.

Thus Engel takes issue with that reversal, asserting that the use of Illinois law in the Manning litigation precludes the United States from plumping for Missouri law in this action. If Engel had been a party to the previous action, issue preclusion principles might have been called directly into play. But Engel was not such a party (Manning was), so that the question is one that is usually labeled nonmutual offensive collateral estoppel.[3] And the Supreme Court has squarely prohibited that type of estoppel against the government in United States v. Mendoza, 464 U.S. 154, 163 (1984).[4]

---

[3] Despite this Court's preference for the more precise term "issue preclusion," the usage in the text is so prevalent that this opinion employs it.

[4] Although Engel makes no mention of Mendoza, he manages to cite its companion case decided the same day, United States v. Stauffer Chem. Co., 464 U.S. 165 (1984), for the asserted

4

Moreover, even if collateral estoppel were available, the choice of law issue was not actually decided in the previous litigation so as to permit application of the doctrine here. Judge Kennelly never spoke to that issue when he employed Illinois law to rule on the tort claims--instead he wrote "[i]n this case, both sides appear to assume that Illinois law governs" (Manning v. Dye, No. 02 C 372, 2004 WL 2496456, at *13 (N.D. Ill. Nov. 5), and he then proceeded on the same assumption.[5]

Engel argues in the alternative that the United States is judicially estopped from arguing for the use of Missouri law. Judicial estoppel, while it does not require mutuality, is a discretionary, flexible remedy designed to "prevent the perversion of the judicial process" by litigants who switch legal positions for their own advantage (New Hampshire v. Maine, 532 U.S. 742, 749-51 (2001)(internal quotation marks omitted)).

On that score this Court finds that the very fact that choice of law was not affirmatively litigated in the previous litigation demonstrates that the United States has not intentionally misled this Court (or Judge Kennelly, for that

---

proposition that collateral estoppel against the government is appropriate in this case. But Stauffer by its terms applied only to instances of mutual collateral estoppel (id. at 169).

[5] It goes without saying that Engel's case also differs from that of Manning in one key respect: Manning, in addition to being prosecuted in Missouri for kidnapping, was also prosecuted for murder in Illinois.

5

matter) on the issue.  Hence the United States' current argument for the use of Missouri law does not constitute an "improper use of judicial machinery" or otherwise endanger the "essential integrity of the judicial process" (New Hampshire, 532 U.S. at 750)(internal quotation marks omitted).

In sum, neither issue preclusion nor judicial estoppel prevents the United States from broaching the issue of choice of law.  This opinion turns to that subject.

### Choice of Law

It is obvious, of course, that if Illinois and Missouri substantive law pose no real conflict, there is no need to embark on a choice of law analysis (In re Air Crash Disaster near Chicago, 644 F.2d 594, 605 n.2 (7th Cir. 1981)).  Here the United States has identified no differences between the two states' treatment of two of Engel's three claims (malicious prosecution and civil conspiracy), so it concentrates on the different manner in which Missouri courts treat claims of intentional infliction of emotional distress.  In particular the United States highlights three aspects in which Missouri and Illinois law purportedly conflict, asserting that in the Show-me State (1) such a claim cannot exist alongside the tort of malicious prosecution, (2) a defendant's sole intention must be to cause emotional distress and (3) the claim must include a showing of bodily harm.

6

For reasons explained below, the first and second suggested conflicts (which are conceptually related) would not produce a different result at this stage of the proceedings. But it is quite another matter as to Missouri's additional element of bodily harm, for no such requirement exists in Illinois (see, e.g., Feltmeier v. Feltmeier, 207 Ill. 2d 263, 269, 798 N.E.2d 75, 80 (2003)). In light of that difference, a brief choice of law analysis is in order.

Wherever as here a federal court is called upon to address state law claims, Erie v. Tompkins mandates that it do so under state law (not federal law) doctrines--doctrines that a state court in the forum state would apply. And the forum state's (here Illinois') choice of law doctrines are just as much a part of its substantive law as its principles that govern substantive claims. As Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co., 544 F.3d 752, 759 (7th Cir. 2008) has put the matter in the context of diversity jurisdiction:[6]

> In a suit, like this one, where subject matter jurisdiction is based on diversity, the forum state's choice of law rules determine the applicable substantive law.

It follows then that the first question to be answered in the choice of law inquiry is what law an Illinois court would apply to Engel's state law claims. And because Illinois courts

---

[6] As n.1 indicates, Federal Tort Claims Act claims parallel diversity-based claims in that regard.

7

adhere to the Restatement (Second) of Conflict of Laws ("Restatement"--see, e.g., Safeco Ins. Co. v. Jelen, 381 Ill.App.3d 576, 580, 886 N.E.2d 555, 558 (3d Dist. 2008))--this opinion will look to the Restatement's principles as well as to Illinois caselaw.

As a conceptual matter, the United States urges the application of Missouri substantive law on the ground that Engel's conviction and the emotional distress occasioned by that conviction occurred in Missouri. For his part, Engel concedes (as he must) that he was prosecuted in Missouri. But because the investigation leading up to his prosecution was initiated in Illinois and because the law enforcement officers were based in Illinois, Engel believes that Illinois has a greater stake in the resolution of his claims--and thus, in the parlance of Restatement §146, a "more significant relationship" to the dispute. Hence Engel frames the issue as one in which the interest of Illinois in preserving the integrity of its law enforcement trumps that of Missouri in policing the use of its courts.

Engel's contention, while not wholly lacking in force, is ultimately unpersuasive. Both parties agree that because the tortious injury occurred in Missouri, there is a rebuttable presumption that Missouri law applies (Restatement §§146, 155). Both as to malicious prosecution and as to intentional torts such

8

as infliction of emotional distress, Restatement §146 cmt. f teaches that the place of injury is of "particular importance." As Safeco, 181 Ill.App.3d at 580, 886 N.E.2d at 558 (citations, including one to the Restatement, omitted) has said:

> If the claim raised is a tort, the most significant relationship test is used. Under the most significant relationship, the law of the state where place of the injury controls unless another state has a more significant relationship to the occurrence.

And because Engel was prosecuted and incarcerated in Missouri, this is not a case in which the place of injury was merely "fortuitous" or "bears little relation to the occurrence" (Restatement §145, cmt. e).

Engel endeavors to counter by pointing out that the investigation that led to his prosecution originated in Illinois, where the law enforcement officers were based. But it was the defendant officers' conduct in convicting him at trial that caused his distress, and that conduct clearly occurred in Missouri. And for claims that turn on whether certain conduct was tortious, the state in which the injury occurred will "usually" provide the applicable law (Restatement §156).

Nor does Engel fare better by attempting to call upon the factors enunciated in Restatement §6. What he cannot escape is that the conduct about which he complains had its impact in a Missouri conviction and that its ensuing effect--his long-term commitment, during which he suffered the claimed emotional

9

distress--also took place in Missouri.  Those factors plainly satisfy the "most significant relationship" test, so that Engel's charges of malicious prosecution and of the intentional infliction of emotional distress arising out of those events must be governed by Missouri law.

### Intentional Infliction of Emotional Distress

Under Missouri law a plaintiff bringing a claim of intentional infliction of emotional distress "must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm" (<u>Gibson v. Brewer</u>, 952 S.W.2d 239, 249 (Mo. 1997)). Engel Mem. 18 somehow contends that bodily harm is not a required element of the claim under Missouri law, pointing to the pre-<u>Gibson</u> decision in <u>Bass v. Nooney Co.</u>, 646 S.W.2d 765, 772 (Mo. 1983).  Not so--<u>Bass</u> dealt with the <u>negligent</u> infliction of emotional distress, leaving the later-reconfirmed bodily harm requirement of the <u>intentional</u> version of that tort intact.

No quarrel is voiced by the United States as to the adequacy of Engel's allegation that the conduct at issue was outrageous and was intentionally or recklessly caused.  Instead the United States urges Engel's failure to allege bodily harm.  That is hardly surprising, given Engel's reliance on Illinois law, which has no bodily harm requirement (note the silence in Complaint ¶¶49 and 52 on that score).  Indeed, Engel does not even take the

10

opportunity in his responsive memorandum to argue that he did in fact suffer bodily harm, for he devotes that section of his memorandum to his mistaken belief that no such requirement exists under Missouri law (E. Mem. 19). That deficiency is enough to warrant the dismissal of Engel's claim.

That conclusion renders it unnecessary to rule upon the strength (or lack of strength) of the other two figurative strings that the United States contends would also enable its equally figurative bow to launch the arrow of dismissal at Engel's claim of intentional infliction of emotional distress. This Court, having reviewed those added assertions and the parties' submissions, will say only that it found those contentions dubious at best--the United States is fortunate to have prevailed on its first argument for dismissal.

## Malicious Prosecution

This Court's March 4 opinion (see n.2) has already denied codefendant Richard Quid's motion to dismiss Engel's state law malicious prosecution claim on the basis of Illinois law. Even in the face of that denial, the United States insists that Engel's similar claim against it must be dismissed under either Missouri or Illinois law, which are virtually identical for purposes of that claim (compare State ex rel. Police Retirement Sys. v. Mummert, 875 S.W.2d 553, 555 (Mo. 1994) with Hurlbert v. Charles, 238 Ill.2d 248, 255, 938 N.E.2d 507, 512 (2010)).

To that end the United States asserts that Engel has failed to allege sufficiently that the underlying proceedings terminated in his favor and that the defendants had lacked probable cause. But that position betrays a fundamental misunderstanding of the federal system's notice-pleading (rather than fact-pleading) regime, under which Engel must simply provide adequate notice of his claims.

As for the favorable-termination element, Engel has submitted that after the Missouri Supreme Court granted his habeas corpus petition and vacated his conviction, the state authorities declined to retry him--they issued a nolle prosequi. This Court finds no merit in the United States' position that by failing to "explain the basis for Missouri's decision not to retry him," Engel has somehow failed to plead successfully that the proceedings were terminated in his favor, which some authorities construe as connoting a manner indicative of his innocence (U.S. Mem. 14).[7] Apart from the somewhat (though not entirely) counterintuitive nature of the contention that Engel's outright release from prison after serving 19 years was not reasonably indicative of his innocence, it is totally unpersuasive to suggest that the facts outlined in the

---

[7] It bears mention that Quid's motion to dismiss the malicious prosecution claim had made the same argument about the requirement that the prior proceedings be terminated in a manner indicative of innocence.

Complaint--facts that ascribe corrupt behavior to law enforcement personnel--fail to raise his right to relief above a "speculative level" (see Twombly, 550 U.S. at 555).

Besides thus ignoring federal pleading standards, the United States also appears to misapprehend the substantive law on this question. As indicated by Restatement of Torts §659 and its cmt. e, a prosecutor's formal abandonment of proceedings via a nolle prosequi is the usual means for terminating the prosecution in the accused's favor, implying his innocence. And while Section 660 of that Restatement gives four situations in which a nolle prosequi will not indicate innocence, nothing in Engel's Complaint or the United States' submissions implicates any of those situations.

As to the probable cause element of Engel's malicious prosecution claim, the United States strikes out there as well. Its three-page discussion of the issue is largely devoted to the factual details of Engel's conviction, as though its motion were seeking summary judgment rather than a pleading ruling.[8]

---

[8] For example, United States Mem. 15 makes the following comment as to probable cause, without acknowledging that such a factual inquiry would be inappropriate at this motion-to-dismiss stage:

> In making a probable cause determination, courts must consider all of the circumstances surrounding the prosecution, including hearsay evidence, concealed exculpatory evidence, and statements from any and all witnesses, even those that would be the most credible before a jury.

13

"Probable cause" under both Illinois and Missouri law requires circumstances that would lead a cautious and prudent person to believe that the target is guilty of the offense (Freides v. Sani-Mode Mfg. Co., 33 Ill.2d 291, 295-96, 211 N.E.2d 286, 288-89 (1965); Alexander v. Laclede Gas Co., 725 S.W.2d 129, 130 (Mo. Ct. App. 1987)). While a criminal indictment or conviction is prima facie evidence of probable cause, it may be rebutted by evidence that it was obtained fraudulently (Freides, 33 Ill.2d at 296, 211 N.E.2d at 289; Mummert, 875 S.W.2d at 555).

Here Engel has alleged that the defendant officers lacked probable cause--and contrary to what the United States claims, Engel has no obligation at this stage of the litigation to put forth evidence rather than adequate allegations on that issue. Indeed, it smacks of the bizarre for the United States to attempt to erect a threshold barrier of probable cause on a conviction that was overturned based on a showing of fabrication of testimony, witness tampering and withholding of exculpatory evidence.

Put simply, whether the defendant officers had probable cause is something that will be proved or disproved based on the record to be developed in this case.[9] For now Engel's malicious

---

[9] Apparently forgetting its earlier emphasis on the inapplicability of Judge Kennelly's rulings in the Manning litigation to this case, the United States seeks to make much of his findings of fact in connection with the malicious prosecution claim in that action. Those findings are, of course, obviously

14

prosecution claim will proceed to the merits--the United States' motion to dismiss that claim is denied.

### Civil Conspiracy

Lastly, the United States argues the impossibility of maintaining a claim of civil conspiracy on the part of a plaintiff who has failed to plead an underlying tort adequately. Because Engel's claim of malicious prosecution has survived analysis, the motion to dismiss his civil conspiracy claim on that ground is also denied.

### Conclusion

Of the several United States' efforts at dismissal, only that challenging Engel's claim of intentional infliction of emotional distress is granted, while those relating to the claims of malicious prosecution and civil conspiracy are denied.  All parties are to continue taking discovery, and as stated orally at the May 11, 2011 status hearing, a ruling dealing with Buchan's motion to stay proceedings pending his appeal will be turned to shortly.

_____
                          Milton I. Shadur
                          Senior United States District Judge

Date:  May 25, 2011

---

not dispositive in this lawsuit.