IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GARY ENGEL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 10 C 3288 ) |
| ROBERT BUCHAN, et al. | ) Judge Shadur ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION FOR LEAVE TO AMEND THEIR ANSWERS**

Plaintiff, Gary Engel, respectfully submits this Response to Defendants' motion for leave to amend, stating as follows.

### Introduction

Defendants' motion should be denied for any of several reasons. First, the "evidence" cited by the Defendants as proof of Plaintiff's purported guilt is nothing of the sort. The fact that Mr. Engel and Mr. Manning were tape-recorded mentioning the Missouri kidnapping in conversation establishes nothing. Indeed, Mr. Manning's recorded statement was nothing but a precise summary of exactly what Mr. Mammolito testified to on the witness stand at the criminal trials -- nothing more, and nothing less. In no way did Mr. Manning implicate himself or Mr. Engel in Mammolito's crime, much less "confess." The Government's suggestion otherwise is an unjustified distortion.

Independently, Defendants' motion should be denied on the merits. The law does not support their belated attempt to amend the complaint now, so many years after they learned facts that arguably could have supported a guilt defense. And to the extent

Defendants truly contend that the 2012 audiotapes were the "hook" that made them first suspect that Mr. Engel may be guilty, the inadmissiblity of those recording spell doom for Defendants' motion on that ground as well.

A. **THERE IS NO NEW EVIDENCE (TAPE-RECORDED OR OTHERWISE) ESTABLISHING THAT MR. ENGEL OR MR. MANNING HAD ANYTHING TO DO WITH THE 1984 MISSOURI KIDNAPPING.**

1. Before discussing the merits of Defendants' motion, Plaintiff begins by pointing out the falsity of the motion's underlying premise. Steve Manning and Gary Engel did not commit the 1984 Missouri kidnapping. And more to the point for present purposes, nothing in the numerous hours of the 2012 audio-recordings suggests otherwise.

2. By way of background, this is not the first time the Goverment has claimed that Mr. Manning supposedly "confessed" to the Missouri kidnapping on audiotape. In the 1990's, the FBI created a report contending that Mr. Manning confessed to the 1984 Missouri kidnapping to a snitch named Tommy Dye, who was wearing a wire. *See* Exhibit A. The resulting tape recording, however, contains nothing even remotely resembling a confession. In fact, the only time the Missouri kidnapping is mentioned on the recordings, Mr. Manning states: "I'm being framed. Tommy, I'm thinking about calling the [television] networks. I mean, they're framing me," to which the snitch replies: "I know, Steve, I know they're framing you." *See* Exhibit B.[1]

---

[1] Defendant Buchan also claimed that Mr. Manning confessed on tape to the murder of a man named Chuckie English, a claim that failed to withstand scrutiny when it turned out that (a)

2

3. In this case, the Government now claims that Mr. Manning supposedly made a "candid admission about participating in a kidnapping with Mammolito" on tape. *See* Mot. at 3. This claim is ludicrous. At most, Mr. Manning and Mr. Engel are discussing the same kidnapping that they have been discussing (because they have been forced to discuss it) for literally decades. This is a crime for which they were tried a combined total of three times, and for which they spent a combined 35+ years in prison.

4. Indeed, it is no surprise that the kidnapping came up in their conversation. This kidnapping, and the Government's allegations about their purported involvement and that of a man named Mammolito, has been the tie that binds the Manning-Engel relationship for decades. As the two of them prepared for multiple criminal trials and then later sat around together in prison (until their convictions were overturned), Mr. Manning and Mr. Engel have spent countless hours theorizing about subjects such as Mammolito's role in the kidnapping, and his motivations to try to implicate them in it.

5. The single, isolated statement on the tapes that

---

there was no such confession on the tape; and (b) Mr. Manning was in jail at the time the murder was committed. Likewise, Buchan claimed that Mr. Manning supposedly confessed to Dye on tape to killing James Pellegrino. However, there is no such confession on the tapes. Faced with that inconvenient reality, at Mr. Manning's criminal and then civil trial, the Defendants contended that the purported confession got swallowed up in a "two second gap" in the tape recording, even though there is no discussion of the murder before or after the "two second gap," or anywhere else in the eight hours of recordings.

3

Defendants now contend constitutes the "candid admission" is the following statement by Mr. Manning:

> We can go to the Marshall's service from right there. There's a lot you don't know, there's a lot he doesn't know. Right? Do it that way. Remember Mammolito? Participated, he didn't know half the shit.

See Exhibit C. In response to the foregoing statement, Mr. Engel states: "Yeah." Similarly, Mr. Engel's response to Mr. Manning's prior two (unrelated) statements were "Yeah," and his responses to Mr. Manning's next two (unrelated) statements are "Right," and "[Inaudible]."[2]

      6.    The fact that Mr. Manning referenced Mr. Mammolito's participation and knowledge in the Missouri kidnapping on the tape, much less Mr. Engel's response, is of no significance at all. Indeed, Mammolito *testified at Mr. Manning's and Mr. Engel's criminal trials that he participated in the kidnapping*. He basically claimed that the crime was not his show, and that he was along for the ride. (The two kidnapping victims believe that they were kidnapped by rival drug dealers in Kansas City, whereas Mammolito was an organized crime figure who was not involved in illegal drugs.)

      7.    In other words, the tape-recorded statement on which the Defendants presently rely is nothing more than an

---

[2] The foregoing transcription is drawn from the Government's proffer in Mr. Manning's criminal case. The actual tapes themselves have not been produced, so Plaintiff is forced to take the Government's word for the accuracy of the transcript. Plaintiff mentions this because it turned out there were multiple substantive and damning inaccuracies in the Government's transcription of the Manning-Dye tapes referenced in the text above, particularly around favorable comments listed as "inaudible."

accurate summary of what Mammolito testified to on the witness stand at all of the criminal trials. There is nothing about this statement, or any other, that establishes that Mr. Manning or Mr. Engel were themselves actually involved in the crime. Defendants suggestion to the contrary is nothing but wishful thinking.[3]

**B. TO THE EXTENT THAT DEFENDANTS' MOTION RELIES ON EVIDENCE THAT IS INADMISSIBLE AT TRIAL, AMENDMENT WOULD BE FUTILE**

8. Defendants motion affirmatively states that they do not wish to address the admissibility of Mr. Manning's recorded statement at this time, see Mot. at 4 ("To be clear, Defendants do not ask the Court to addrss the admissiblity of the Title III intercepts at this time"), but the statement's inadmissibility comprises independent grounds to deny the pending motion on which it is based.

9. Backing up, this Court has not yet been called upon to address the Defendants' forthcoming motion to be given leave to reference at trial the evidence surrounding the lurid criminal charges now pending against Mr. Manning (or Mr. Manning's possible conviction thereon), nor Plaintiff's

---

[3] In dialogue between counsel, counsel for the United States took issue with Plaintiff's counsel's representation to the Court at a hearing that defense counsel was falsely claiming that Mr. Manning had "confessed" on tape. See Exhibit D. Defendants were correct, and Plaintiff's counsel has since apologized, and pledged to set the record straight in this filing: Contrary to Plaintiff's counsel's recollection, having now had the opportunity to review the relevant transcripts, Defendants' counsel had never previously represented to the Court that Mr. Manning had supposedly "confessed" on the tapes. All of that said, that apology is now moot given that Defendants have made that very representation in their latest filing, representing (falsely) that Mr. Manning supposedly made a "candid admission about participating in the kidnapping." See Mot. at 3.

forthcoming motion to bar the same. But when the Court does consider those motions, it will likely conclude that whatever crimes Mr. Manning and Mr. Engel may or may not have committed in 2012, that subject has no relevance whatsoever to the allegations against them surrounding a crime committed in 1984. Propensity is obviously an impermissible inference, and, here, the danger of unfair prejudice is so profound that any miniscule possibility relevance is easily outweighed. *E.g., United States v. Gometz*, 879 F.2d 256, 260 (7th Cir. 1989) (evidence should not have been admitted where "prior bad acts referred to occurred at least three years before the assault in this case").

      10. On that score, Plaintiff further points out that the Government in Mr. Manning's criminal case has itself taken the position that the subject matter of Mr. Manning's lawsuit against Defendant Buchan is irrelevant to the 2012 criminal case. See Exhibit E, United States' motion *in limine* at 2 ("[D]espite the absence of any connection between the current criminal charges and the 2002 Lawsuit – which concerns events that transpired roughly twenty years ago or more – it is anticipated that [Mr. Manning] may seek to inject this issue into his upcoming trial. . ."); *id.* at 3 (listing relief requested as barring Mr. Manning from "introducing evidence or arguing at trial that the current [2012] charges are part of a 'continuing pattern of misconduct' that includes the events giving rise to the 2002 lawsuit."); *id.* at 5 ("[E]ven if there were some marginal relevance that could be attributed to the investigation

6

of the 1984 kidnapping ... introduction of this evidence would be unfairly prejudicial to the government."); *id.* at 3 ("Finally, presenting evidence concerning the 1984 kidnapping ... will cause undue delay and will be a waste of time."). *See also id.* at 10 ("By raising inflammatory allegations of law enforcement misconduct by agents twenty years ago in an unrelated investigation, the defendant no doubt would hope to paint the current investigation with the same broad brush.").

        11.   The United States won this motion *in limine*. At Mr. Manning's current trial on the 2012 criminal kidnapping charges, there will be no reference to 20-year old alleged misconduct by the Defendants. By the same token, it is equally appropriate to bar references to a crime for which Mr. Manning and Mr. Engel stand accused some 20+ years after the events giving rise to the Missouri kidnapping investigation. Because the tape recordings, and the surrounding context for those recordings, should be deemed inadmissible, Defendants' present motion seeking leave to amend on the basis of the recordings can be denied on that basis alone.[4]

---

[4] The Court could also deny Defendants' motion on futility grounds for another reason. Although Defendants cite two cases for the proposition that Missouri law recognizes guilt as a defense to state malicious-prosecution claims, more recent case law suggests that may no longer be the law. *See Grimes v. Bagwell,* 837 S.W.2d 554, 559 (Mo. Ct. App. 1992) ("The finding of actual guilt or innocence of a criminal offense is not an element of malicious prosecution. Whether plaintiff was guilty or innocent, to the extent known by defendant, would have had a bearing in determining if defendant's actions that caused plaintiff to be prosecuted were based upon reasonable grounds-whether there was malice.").

C.  UNDUE DELAY CONSTITUTES AN INDEPENDENT GROUNDS FOR DENYING DEFENDANTS' MOTION

12.  Courts may deny requests for leave to amend on the grounds of undue delay, futility, or undue prejudice. *See, e.g., Rizzo v. City of Wheaton, Ill.*, 462 F. App'x 609, 612-13 (7th Cir. 2011) (affirming denial of leave to amend where party waited one year before seeking leave to amend and proposed amendment lacked merit). Undue delay alone warrants denying leave to amend where, as here, the delay is lengthy and the case is far along. *See, e.g., Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988) ("the longer the delay, the greater the presumption against granting leave to amend. The longer the delay in seeking leave to amend, the likelier is it both that the delay is inexcusable (it should not have taken the Tamaris' counsel ten years to figure out they might have a negligence claim against Bache Lebanon) and that granting leave to amend will, by further delaying the lawsuit, impair the public interest in the prompt resolution of legal disputes.").

13.  Here, Defendants' delay is unjustified. At bottom, the entire motion is based on a defective foundation: Defendants' discovery of the recorded statements in 2013 did not "alert" the Defendants for the first time to the possibility that perhaps Mr. Manning and Mr. Engel were involved in the 1984 Missouri kidnapping. Unless they are claiming they never previously developed any evidence suggesting Mr. Engel's guilt until this tape came along, they are far too late.

14.  This point is brought home by the cases cited by

8

Defendants' own motion, which quotes the Seventh Circuit's teaching that "the pertinence of a particular defense may only become apparent after discovery, for example, in which case it would be reasonable for the court to permit the belated assertion of that defense." Mot. at 2, citing *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997). Defendants go on to quote *Venters* for the proposition that "[o]nce the availability of an affirmative defense is reasonably apparent," the "appropriate thing to do, of course, is to *promptly* seek the court's leave to amend his answer." *Id*. at 967 (emphasis added).

        15. Here, Defendants have waited until after discovery closed and the FPTO was filed before asserting this defense. Given their litigation positions throughout the case, in no way can Defendants be characterized as having "promptly" sought leave to amend their answer upon becoming aware that they might be relying on the proposition that Mr. Engel was guilty. *See Tamari*, 838 F.2d at 908-09 (request for leave to amend first made "six weeks before the trial was finally to begin" was too late, despite the fact that the trial was subsequently postponed for near a year, and despite the fact that it was "it is hard to see what prejudice would have ensued from allowing the" amendment); *Justice v. Town of Blackwell*, 820 F.2d 238, 240-41 (7th Cir. 1987) (14-month delay in seeking leave to amend to assert qualified immunity defense not justified); *McCarthy v. PaineWebber, Inc.*, 127 F.R.D. 130, 132 (N.D. Ill. 1989) (Shadur, J.) (denying leave to amend where "nearly four years have elapsed

between the original Complaint and the motion for leave to file the FAC-and the amended claim relates to events that occurred a full six years ago!"). As stated, the motion should be denied on that ground as well.

## Conclusion

16. For the foregoing reasons, Defendants' motion should be denied.

> Respectfully submitted,
>
> /s/ Jon Loevy
>
> Arthur Loevy
> Jon Loevy
> Scott Rauscher
> LOEVY & LOEVY
> 312 N. May Street
> Suite 100
> Chicago, IL 60607
> (312) 243-5900

## CERTIFICATE OF SERVICE

I, Jon Loevy, an attorney, certify that on February 11, 2014, I caused the foregoing Response to be served on all counsel of record via CM/ECF electronic filing.

> /s/ Jon Loevy