# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANIEL ENGEL, Administrator of the Estate of Gary Engel, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 10 C 3288 |
| ROBERT BUCHAN, ) ) | |
| Defendant. ) | |

## ORDER ON REMAINING MOTIONS IN LIMINE

The Court rules as follows on the remaining pretrial motions.

**1. Testimony of Tron Brekke**

Defendant has provided a proffer of the testimony he intends to elicit from his expert witness Tron Brekke on direct examination, pursuant to the Court's order of 7/31/2015. Defendant lists testimony under four topic headings. Plaintiff does not object to topics one and three, so the Court focuses on topics two and four.

In topic four, defendant proposes to elicit via Brekke that defendant's conduct complied with Department of Justice and FBI standards of conduct. More specifically, defendant says, he "intends to elicit Mr. Brekke's testimony concerning the FBI Inspection Division's internal audit and review process of the Chicago Field Division Office. No deficiencies were found by the Inspection Division with respect to the Missouri kidnapping investigation and Robert Buchan's investigative conduct, which was identified for review." Def.'s Brekke Submission at 3-4.

The Court agrees with plaintiff that this is inadmissible. The proposition that a law enforcement agency, after the fact, blessed the conduct of one of its own agents or officers is irrelevant. To put it another way, the FBI's opinion or conclusions regarding defendant's compliance with applicable standards does not tend to make any fact at issue in this case more or less likely. In any event, the Court would exclude this evidence under Federal Rule of Evidence 403 because it amounts to improper bolstering that has very little probative value that is significantly outweighed by the unfair prejudice to plaintiff that would result from its admission. The Court further notes that, as described in Brekke's very lengthy written report, FBI / DOJ internal guidelines are, in various critical respects, essentially the same as the very legal rules against which the jury will be required to compare Buchan's conduct. The Court concludes that Brekke's testimony as described under topic four amounts to an attempt to step into the jury's shoes in a way that will not be particularly helpful to the jury in determining disputed matters, because the standards in question are generally applicable legal standards that lay juries can apply on their own without "expert" help. *See* Fed. R. Evid. 702(a).

In topic two, plaintiff objects to testimony covered by the first sentence of defendant's proffer, which states that Brekke will testify that "Robert Buchan's investigatory techniques, including, but not limited to whether his collection and dissemination of evidence complied with relevant Attorney General and Federal Bureau of Investigation disclosure policies and procedures." The Court excludes this testimony for the same reasons just described.

Along the same lines, during yesterday's opening statements, defense counsel told the jury that the FBI determined that defendant had complied with applicable procedures. After the defense opening, the Court noted that it still had the Brekke matter under advisement and inquired why defense counsel had gone into this topic. Defense counsel replied that she was relying not on the anticipated testimony of Brekke but rather that of another witness, a supervisory FBI special agent named Taylor, who participated in an after-the-fact review of Buchan's actions. This testimony is likewise inadmissible and is excluded, for the reasons discussed regarding Brekke.

**2.      2012 recorded conversation excerpt**

Pursuant to the Court's ruling on a motion *in limine*, defendant has offered a proposal for admitting an arguable admission about the Missouri kidnapping made by Gary Engel in 2012 in a conversation with Steven Manning that was surreptitiously recorded. *See* Order of July 30, 2015 (dkt. no. 534) at 4-5. Plaintiff objects. The Court concludes that the audio recording evidence is relevant for the reasons described in the prior order and that defendant's proposal, with one alteration, would permit its admission in a way "that does not put before the jury the other surrounding events of 2012, which the Court has excluded." *Id.* at 5.

The audio evidence of this statement is not unfairly prejudicial, with one possible exception. Contrary to plaintiff's contention, admission of this very brief excerpt will not in the Court's view suggest to the jury Gary Engel's involvement in a separate kidnapping plot. On the other hand, its admission will communicate to the jury that Engel (or at least Manning) was again being investigated in 2012—otherwise why the surveillance?—and this has a potential for unfair prejudice. This potential does not,

however, outweigh, let alone significantly outweigh, the probative value of the evidence. Plaintiff also suggests that defendant will use the excerpt to argue that Manning and Engel were planning to falsely portray themselves as U.S. Marshals. The Court does not agree that this very short and somewhat cryptic excerpt suggests this. And to be quite clear about it, the Court bars defendants from so arguing and from attempting to draw such an inference.

Plaintiff expresses concern about the video evidence of this clip coming in. The Court agrees that is a legitimate concern and that would pose a significant potential for unfair prejudice. And what is probative is the statement itself, not the surroundings where it was made. Thus the Court will permit defendant to play the audio clip but not the video.

The Court acknowledges that the admission of the audio excerpt departs from a ruling Judge Shadur made when he presided over the case—though, to be clear, a larger body of evidence was under consideration at that time. The ruling was, of course, interlocutory and subject to reconsideration by Judge Shadur. The undersigned judge, having been reassigned the case, has no less authority. The fact that the issue concerns admissibility of evidence at a trial over which the undersigned judge is presiding is also a factor, given the Court's direct responsibility for ensuring that the trial is fair to both sides. Finally, plaintiff does not identify any prejudice from the altered ruling other than the admission of the evidence itself; in other words, there is no indication that Judge Shadur's ruling on this particular item of evidence had any material effect on discovery or other pretrial strategic decisions.

Last but not least, plaintiff says that if the audio excerpt comes in, he will want to elicit evidence that there were hundreds of hours of recordings on which Gary Engel said nothing about the Missouri kidnapping. Such evidence would have minuscule probative value at best, and if plaintiff were to elicit it, there is a decent chance he would open the door to admission of other evidence from 2012 that the Court has excluded. Indeed, plaintiff's own proposed stipulation about this includes the proposition that during the other recordings, Manning and Engel made "numerous statements against their own interests." Pl.'s Resp. to Def.'s Proposal to Admit Title II [sic] Recordings at . The Court precludes plaintiff from eliciting this line of testimony.

3.     **Remainder of defendant's motion to reconsider**

The Court declines to reconsider Judge Shadur's ruling barring evidence of certain legal advice from AUSA Canella Henrichs. There is nothing legally infirm about the ruling. In addition, in contrast to the matter of admission of the audio recording excerpt just discussed, plaintiff relied on the ruling to make decisions about what discovery to take or not to take. For this reason, it would be enormously unfair to plaintiff were the Court to change course now.

4.     **Prior bad acts regarding Steven Manning**

Nearly all of the prior bad acts regarding Steven Manning that plaintiff seeks to exclude have no bearing on any issue in this trial, and specifically on the issue of Gary Engel's guilt on the Missouri kidnapping. The Court acknowledges that Engel was accused of the kidnapping along with Manning, and thus evidence of Manning's guilt—at least in some situations—may tend to show Engel's guilt as well. But there are limits

to this, and in any event hardly any of the evidence tends to show Manning's guilt. The Court excludes the following:

- the evidence included in plaintiff's topic A, regarding matters regarding Aetna Insurance Company, Mukul Bhatt, Daniel Srodon, and Richie Moffett;

- the evidence included in plaintiff's topic B, regarding a conversation involving Ron Matricard and Terry O'Keefe;

- nearly all of the evidence included in plaintiff's topic C, including references to allegations that Manning killed his father, someone named Sheahan, someone named Vukovic, and others (the Court deals separately with the Thomas McKillip matter below);

- the evidence included in plaintiff's topic D, regarding Manning's disciplinary matters while employed as a Chicago police officer;

- the evidence included in plaintiff's topic E, regarding Manning's attempt to create a false alibi with Sylvia Herrera (this does not tend to show, even indirectly, *Engel's* guilt, and its admission would be highly unfairly prejudicial to plaintiff); and

- references to Manning's 1980s-era criminal convictions.

The Court ruled in open court yesterday regarding topic G, concerning items found in Manning's storage locker, with the exception of a note mentioning the names of McKillip and Mark Harris, one of the kidnapping victims. The Court will rule on that point orally this morning.

Finally, the Court has previously indicated that it will permit defendant to elicit that Manning was suspected of murdering McKillip, because this tends to explain

directly the reason why defendant was pursuing Manning, a topic that plaintiff's counsel has repeatedly raised. However, no details regarding the murder, the evidence about the murder, or the specifics of why Manning was suspected are admissible (aside from identifying the person who was the source of the allegation about Manning). What is probative is the fact that Manning was suspected. If the details or evidence were admitted, the trial would be diverted into a mini-trial of the McKillip murder, which likely would confuse the jury and would unfairly prejudice plaintiff.

Date: August 4, 2015